UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SHARON SHULAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-266-HBG |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 19 and 20], Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 and 24], and Plaintiff's Reply Brief [Doc. 25]. Sharon Shular ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.   **PROCEDURAL HISTORY**

On December 13, 2013, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq.*, claiming a period of disability that began on November 4, 2013. [Tr. 159-61, 186]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 114]. A hearing was held on November 24, 2015. [Tr. 26-54]. On April 22, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 14-21]. The

Appeals Council denied Plaintiff's request for review on May 15, 2017 [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 21, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since November 4, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: Heberden's nodule of the right pointer finger; hypertension; left ankle edema; and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes or scaffolds and can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. In addition, the claimant can frequently handle with the right upper extremity.
>
> 6. The claimant is capable of performing past relevant work as a maid. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 16-21].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal, Plaintiff alleges that the ALJ committed two errors of law. First, Plaintiff contends that the ALJ erred by according great weight to the opinions of the nonexamining state agency physicians over the opinions of consultative examiner Eva Misra, M.D., and physical therapist Travis Loveday. [Doc. 20 at 9-12]. Second, Plaintiff submits that substantial evidence does not support the ALJ's step four finding that Plaintiff can perform past relevant work as a maid. [*Id.* at 12]. The Court will address each alleged error in turn.

### A. Medical Source Opinions

#### 1. *Consultative Examiner Eva Misra, M.D.*

Plaintiff argues that Dr. Misra's opinion is supported by her examination findings and other objective medical evidence in the record contrary to the ALJ's finding. [*Id.* at 10-11].

Dr. Misra performed her consultative exam on April 21, 2013. [Tr. 264-66]. Plaintiff reported arthritis "all over for years," ten minutes of morning stiffness, problems dropping things,

back and elbow pain, a trigger finger on the right index finger, a fungal infection on her nails, a slight limp, and swelling of the left ankle. [Tr. 264]. On examination, Dr. Misra noted that Plaintiff exhibited a slight limp, an ability to get up from the chair and on and off the exam table without difficulty, and no assistive devices were used. [Tr. 265]. Plaintiff's grip strength was 3/5 on the right hand and 5/5 on the left hand, and she had no problems writing. [*Id.*]. In addition, Plaintiff demonstrated no clubbing or cyanosis of her extremities, mild edema of the left ankle, and negative straight leg raise testing. [*Id.*]. Dr. Misra noted that due to Plaintiff's effort, Plaintiff exhibited a decrease range of motion of the lumbar spine and left ankle but that all other range of motion testing, as well as muscle strength, were normal. [*Id.*]. Neurologic findings in the bilateral upper and lower extremities were also normal, including negative Babinski, Tinel's, and Robmerg's testing. [*Id.*].

Dr. Misra observed that Plaintiff "appears to have chronic osteoarthritis" and that her "main issues are mild decrease in right grip and her left ankle is swollen, . . . causing a limp and some mild trouble ambulating." [Tr. 266]. Dr. Misra concluded that Plaintiff retained the capacity to occasionally lift and carry, including upward pulling, a maximum of ten pounds for up to one-third of an eight-hour workday, and she could frequently lift and carry less than ten pounds for one-third to two-thirds of an eight-hour workday. [*Id.*]. Furthermore, Plaintiff could stand and walk with normal breaks for a total of two hours in an eight-hour workday, and she could sit without restrictions. [*Id.*].

The ALJ's decision assigned "little weight" to Dr. Misra's opinion because the opinion was "overly restrictive and inconsistent with the examiner's own reported physical findings and the record as a whole." [Tr. 19]. For instance, the ALJ observed that Dr. Misra's restrictive walking and standing limitations were disproportionate to her examination findings in which

6

Plaintiff exhibited mild edema of the left ankle, a slight limp that caused mild trouble ambulating, and decreased range of motion of the lumbar spine and left ankle on account of Plaintiff's effort. [*Id.*]. The ALJ cited to Plaintiff's otherwise normal range of motion and muscle strength throughout, her ability to get up from a chair and on and off the examination table without difficulty, and negative straight leg raise testing. [*Id.*]. The ALJ further questioned the limiting effect of Plaintiff's reduced grip strength in her right dominant hand as she remained capable of writing normally during the examination. [*Id.*].

The ALJ deferred to the opinions of the nonexamining state agency physicians Karla Montague-Brown, M.D., and Thomas Thrush, M.D., who opined at the initial and reconsideration levels, respectively, that Plaintiff could perform light work except that she could occasionally perform postural activities but no climbing of ladders, ropes, or scaffolds, she could frequently handle with her right hand, and she could frequently push and pull with her left lower extremity. [Tr. 20, 59-61, 68-70, 79-82, 89-92]. The ALJ assigned "great weight" to the opinions, "except for the frequent pushing and pulling of the left lower extremity, as there is no evidence that the claimant has persistent ambulation difficulty." [Tr. 20].

Opinions from nontreating and nonexamining state agency physicians are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). While such medical sources are not due the same level of deference that the regulations require for a treating physician, state agency physicians are highly qualified medical specialists who are also experts in

7

social security disability evaluation and therefore their opinions must be considered. 20 C.F.R. §§ 404.1527(e)(3)(i) and 416.927(e)(3)(i).

Plaintiff argues that substantial evidence does not support the ALJ's assignment of little weight to Dr. Misra's opinion for several reasons, none of which the Court finds persuasive. First, Plaintiff contends that her ability to rise from a chair and navigate the exam table without difficulty does not conflict with Dr. Misra's walking and standing limitation because Plaintiff's ability to perform these tasks bears on her ability to balance, rather than "move fluidly." [Doc. 20 at 10]. Plaintiff cites no support for this proposition. *Cf. Cobbs v. Colvin*, No. 1:15-1972-JMC-SVH, 2016 WL 3085906, at *9 (D.S.C. Apr. 1, 2016) (finding the plaintiff's need for extra time and exertion to get on and off the exam table, among other evidence, contradicted the ALJ's conclusion that there was no evidence that showed an impairment in the plaintiff's ability to "move about"), *adopted by*, No. 1:15-CV-01972-JMC, 2016 WL 3059854 (D.S.C. May 31, 2016). Moreover, Plaintiff's own interpretation of the evidence is insufficient to undermine the ALJ's finding. *See Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Similarly, Plaintiff contends that her "ability to write is not necessarily inconsistent with a mild decrease in grip strength." [Doc. 20 at 10]. But again, Plaintiff's alternative interpretation of the evidence is not enough to show error on the ALJ's part.

Second, Plaintiff submits that Dr. Misra's walking, standing, lifting, and carrying restrictions are supported by other objective evidence in the record, including a 2009 treatment

8

note that suggests osteoarthritis of the knees,[1] and a 2013 treatment note indicating the presence of a Heberden's nodule on Plaintiff's right pointer finger. [*Id.*] (citing Tr. 272, 278). Plaintiff does not explain how either impairment precludes her from performing the physical demands of light work. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). Plaintiff submits that she "complained to her medical providers that she had experienced left leg and knee pain for years." [Doc. 20 at 10] (citing Tr. 263). Moreover, the record is sparse of any documentation of complaints of leg or knee pain during the relevant period under review. Plaintiff's citation to a single treatment note that simply recites her subjective allegations of pain while at the same time detailing normal examination findings, including no heat or redness and full range of motion of the left knee, [Tr. 263], does not constitute objective medical evidence that Plaintiff's pain was disabling.

The Court finds that substantial evidence supports the ALJ's conclusion that Dr. Misra's opinion was overly restrictive and inconsistent with her own examination findings as well as the record as a whole. On examination with Dr. Misra, Plaintiff exhibited a *slight* limp that caused *mild* trouble ambulating, she had *mild* edema in her left ankle, and reduced range of motion in her lumbar spine and left ankle due to *Plaintiff's effort*. Plaintiff otherwise demonstrated normal examination findings and did not require an assistive device to ambulate. Though medical records suggest a diagnosis of osteoarthritis of the left knee, the ALJ correctly concluded that there is no objective medical evidence substantiating the impairment. The record fails to provide the

---

[1] The Court notes that at step two of the sequential evaluation, the ALJ found that although the record suggested Plaintiff had osteoarthritis of the left knee, there was no objective medical evidence to support the diagnosis, and therefore it was not a medically determinable impairment or a severe impairment. [Tr. 17]. Plaintiff does not challenge the ALJ's step two finding.

9

diagnostic basis to support the existence of osteoarthritis, treatment notes do not set forth any limiting effect of the alleged impairment, and Dr. Misra noted no abnormalities of the knees. Likewise, there is no evidence from any medical source that the Heberden's nodule on Plaintiff's right hand had any limiting effect, and Dr. Misra similarly made no mention as to the existence of a right hand nodule.[2]

Lastly, the Court notes the opinions of the nonexamining state agency physicians provided substantial evidence that the ALJ could rely upon in discounting Dr. Misra's opinion. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (when the ALJ is "presented with the not uncommon situation of conflicting medical evidence[,] [t]he trier of fact has the duty to resolve that conflict"). Nonexamining state agency consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i). "In appropriate circumstances, opinions [from nonexamining sources] may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3. Here, the state agency physicians reviewed a significant portion of the record, including Dr. Misra's opinion, in reaching their RFC findings. Substantial evidence supports the ALJ's conclusion that their opinions are consistent with the record. Accordingly, the Court finds no merit in Plaintiff's contention that Dr. Misra's opinion was entitled to great weight.

---

[2] Plaintiff unconvincingly argues that the ALJ should have limited Plaintiff to occasional handling, rather than frequent handling incorporated into the RFC, because of Dr. Misra's lifting and carrying restriction and the "multiple medical records" documenting a Heberden's nodule and right hand deformity. [Doc. 20 at 11-12] (citing Tr. 263, 270). However, Dr. Misra did not assess any limitations with regard to handling, nor did she mention the existence of a nodule or other hand deformity. In fact, no medical source of record limited Plaintiff to occasional handling. Furthermore, the "multiple medical records" cited by Plaintiff consist of two treatment notes that simply document the presence of the nodule. [Tr. 263, 270]. The Court finds that Plaintiff has cited no basis that she is limited to occasional handling.

##### 2. *Travis Loveday, Physical Therapist*

Plaintiff also contends that the ALJ did not properly weigh Mr. Loveday's opinion. [Doc. 20 at 10-11].

Plaintiff presented to Mr. Loveday for a one-time examination on October 6, 2015. [Tr. 292-96]. Diagnoses included left knee osteoarthritis and lower back pain.[3] [Tr. 292]. Plaintiff reported symptoms of left knee pain and swelling that worsened with standing, walking, and weight bearing activities; low back pain that worsened with repetitive activities; right arm cramping; and dizziness. [*Id.*]. On examination, Plaintiff exhibited "major loss of trunk" range of motion which Mr. Loveday characterized as a 25-percent reduction of normal range of motion. [*Id.*]. In addition, Plaintiff had reduced range of motion in the left knee, and she was classified as a "moderate fall risk." [*Id.*].

Mr. Loveday concluded that Plaintiff was limited to the following during an eight-hour workday: she could lift or carry up to five pounds occasionally and up to 10 pounds rarely; she would need to lie down every two hours and rest for 30 minutes; she could sit for about four hours and stand and walk for about one hour; she would need to take two-to-three 15-minute unscheduled breaks; she would need to elevate her legs above waist level during prolong periods of sitting for at least one-eighth of the workday; she could use her hands, fingers, and arms for manipulative activities and reaching less than 33 percent of the workday; she could not climb and would also have problems stooping, crouching, and bending; and she would be off-take 25 percent of the day, miss five or more workdays per month, and would be unable to complete a full workday five or more workdays per month. [Tr. 293-95].

---

[3] Mr. Loveday refers to "LBP" in his opinion which the Court presumes stands for lower back pain.

11

The ALJ assigned "little weight" to the opinion, finding it was "not well-supported, is internally inconsistent, and appears to rely largely on the claimant's subjective complaints which include pain." [Tr. 19]. For example, the ALJ cited to Mr. Loveday's finding that Plaintiff suffered from "major loss of trunk range of motion estimated to be 25% of normal range of motion" without actually specifying the range of motion degrees. [*Id.*]. Moreover, the ALJ cited to Mr. Loveday's finding that Plaintiff had decreased range of motion of the left knee while also opining that Plaintiff had no problems balancing and did not require an assistive device. [Tr. 19-20]. The ALJ also noted the absence of objective medical evidence within Mr. Loveday's opinion to support his conclusion that Plaintiff would require unscheduled breaks to lie down, she must elevate her legs above waist level, she could lift and carry up to 10 pounds occasionally, and she could only sit for four hours and stand and walk for one hour. [Tr. 20].

Plaintiff maintains that Mr. Loveday's opinion is entitled to greater deference because it is consistent with and supported by Dr. Misra's opinion, as well as treatment records that document osteoarthritis of the knees and a Heberden's nodule on the right hand. [Doc. 20 at 11]. The Court finds that the ALJ's explanation for the weight assigned to Mr. Loveday's opinion is supported by substantial evidence.

Mr. Loveday is considered an "other source" under the regulations. *See* 20 C.F.R. §§ 404.1513(a), (d) and 416.913(a), (d) (defining "acceptable medical sources" as, generally, licensed physicians and psychologists, whereas all other medical sources who do not qualify as "acceptable medical sources" are considered "other sources"). Although other sources may not establish the existence of a medically determinable impairment, they can provide evidence as to the severity and functional effect of a claimant's impairment. *Id.* An "opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it

any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) (recognizing that a physical therapist was a "non-acceptable medical source" and therefore "the ALJ was not required to give her opinion any particular weight.") (citations omitted). The ALJ must consider other source opinions and should generally explain the weight given to such opinions. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *6 (Aug. 9, 2006).

Here, the ALJ considered Mr. Loveday's opinion and explained the reasons for the assignment of little weight. The ALJ's conclusions that Mr. Loveday's opinion appears to rely more on Plaintiff's subjective allegations rather than examination findings or other objective evidence is supported by the record. The only clinical findings and objective signs noted by Mr. Loveday was Plaintiff's reduced range of motion of the back and knees. Beyond these minimal findings, Mr. Loveday's highly restrictive opinion provides no further explanation for the limitations assessed other than the subjective allegations and complaints reported by Plaintiff. Although Plaintiff asserts that the opinion is consistent with Dr. Misra's findings, the Court reiterates that Dr. Misra's examination findings produced normal to mild results with the exception of reduced range of motion of the back due to the effort put forth by Plaintiff. Moreover, the minimal treatment history for Plaintiff's right hand nodule and alleged osteoarthritis of the knees, as noted above, coupled with no complaints or treatment of Plaintiff's back pain, fail to bolster's Mr. Loveday's opinion. Therefore, the Court finds that the ALJ properly considered and explained the weight assigned to Mr. Loveday's opinion. *See id.*

### B. Step Four – Past Relevant Work

Plaintiff argues that substantial evidence does not support the ALJ's finding that she has past relevant work as a maid. [Doc. 20 at 12].

During the administrative hearing, the ALJ solicited testimony from a vocational expert ("VE") regarding Plaintiff's past work. Plaintiff's past work as a maid was classified by the VE as light, unskilled work according to the job's description in the Dictionary of Occupation Titles ("DOT"), # 323.687-014. [Tr. 50]. The ALJ then posed a hypothetical to the VE, asking whether someone with the same RFC as Plaintiff could perform her past work. [*Id.*]. The VE testified that according to the DOT, Plaintiff could perform her past work as a maid. [*Id.*]. On cross-examination by Plaintiff's counsel, the VE testified that based on Plaintiff's testimony that she flipped mattresses twice a year with the assistance of a co-worker, Plaintiff's work as she actually performed it was at the medium exertional level. [Tr. 46, 51]. The VE elaborated that typically, maids are not required to flip mattresses. [Tr. 51]. The ALJ relied on the VE's testimony at step four of the disability determination to conclude that Plaintiff "can perform her past relevant work as a maid as generally performed in the national economy." [Tr. 20-21].

Plaintiff argues that her RFC for light work precludes her from performing her past work as a maid because her job, as performed, required some medium-level duties. [Doc. 20 at 12]. The Court finds no merit in Plaintiff's contention. Social Security Ruling 82-61 states, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" 1982 WL 31387, *2 (Jan. 1, 1982). Here, the VE classified Plaintiff's job as light exertional work and explained that the job is compatible with Plaintiff's RFC because it does not typically require flipping mattresses. The Court finds that the ALJ's reliance on the VE's testimony supports the ALJ's conclusion that Plaintiff can perform her past work as a maid as it is generally performed in the national economy. Plaintiff has not set forth any evidence that she cannot perform the "job duties as generally required

14

by employers throughout the economy." *See id.* Therefore, because the hypothetical question presented to the VE accurately represented Plaintiff's RFC, substantial evidence supports the ALJ's step four finding that Plaintiff has past relevant work as a maid. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 19**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

/s/ Bruce Guyton
United States Magistrate Judge